IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

| | |
|---|---|
| NATHAN ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2431-CC01256 |
| | ) |
| EPIC STRATEGIES, LLC, | ) |
| BONNIE SNYDER, | ) |
| PAUL REINERT, | ) |
| GREG HORTON, | ) |
| JACOB NORTH, and | ) |
| PATRICK JOHNSTON, | ) |
| | ) |
| Defendants. | ) |

**SEPARATE DEFENDANTS GREG HORTON AND PAUL REINERT'S**
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Exhibit A

1

## COUNTERCLAIM

COME NOW Greg Horton and Paul Reinert (hereinafter "Counterclaim Plaintiffs"), by and through counsel, and, for their Counterclaim against Nathan Adams ("Adams"), state as follows:

1. Counterclaim Plaintiffs are residents of Missouri.

2. Upon information and belief, Adams is a resident of Missouri.

3. Jurisdiction and venue are proper in this Court as Counterclaim Plaintiffs were first injured by Adams' tortious acts in Greene County, Missouri.

4. In fall of 2023, Adams approached Counterclaim Plaintiffs regarding investing in Epic.

5. Adams made false representations and/or concealed material facts regarding the business of Epic, its ownership, and its future business prospects, as described more fully herein, in order to induce Counterclaim Plaintiffs to invest in Epic.

6. Based on representations made by Adams regarding the business of Epic and its operations, Counterclaim Plaintiffs agreed to invest a combined $3,000,000.00 in Epic.

7. Adams further represented to Counterclaim Plaintiffs that Epic required a line of credit in order to continue its operations through the end of 2023, while supposed future business prospects were finalized.

8. Based on Adams' representations, Counterclaim Plaintiffs, in September of 2023, funded and personally guaranteed a $1,200,000.00 line of credit with OakStar Bank.

9. Due to Adams' mismanagement of Epic, the line of credit with OakStar Bank, funded and personally guaranteed by Counterclaim Plaintiffs, was quickly exhausted, conferring little to no benefit to the continued operation of Epic.

10. As a result of Adams' misrepresentations and/or concealments of material fact, Counterclaim Plaintiffs have sustained damages in the form of investment loss, personal liability for credit extended to Epic by OakStar Bank, and other pecuniary harm.

**COUNT I – FRAUDULENT MISREPRESENTATION/CONCEALMENT**

11. Adams concealed and/or misrepresented the following facts:

    a. Adams concealed the existence of the Employment Agreement between Adams and Epic, which permitted Adams to conduct the business of Epic in a unilateral fashion, without input from other owners/members of Epic, engage in self-dealing benefiting Adams at the expense of Epic and its owners/members, and act in contravention of Epic's Operating Agreement and amendments thereto;

    b. Adams represented to Counterclaim Plaintiffs that no Employment Agreement or other agreement existed between Epic and Adams permitting Adams to conduct the business of Epic in a unilateral fashion, without input from other owners/members of Epic, engage in self-dealing benefiting Adams at the expense of Epic and its owners/members, and act in contravention of Epic's Operating Agreement and amendments thereto;

19

c. Adams represented Epic was not in default on any existing loan at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank;

d. Adams represented that Counterclaim Plaintiffs' combined $3,000,000.00 investment in Epic would be held in a secure account with Knights Lending, and that the funds invested by Counterclaim Plaintiffs would be accessible at any time and used for the benefit of Epic;

e. Adams represented to Counterclaim Plaintiffs that Epic required a line of credit in order to continue its operations through the end of 2023, while supposed future business prospects were finalized, and that said line of credit would be used for the benefit of Epic;

f. Adams concealed the fact that Epic was in default on existing loans at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank;

g. Adams concealed the fact that he had used his Epic stock as collateral to secure a loan made by Bonnie Snyder to Epic in the amount of $300,000.00;

h. Adams concealed the existence of certain ownership interests in Epic, or claimed ownership interests in Epic, at the time of

    Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank;

  i. Adams misrepresented the existing or claimed ownership interests in Epic at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank.

12. The facts concealed by Adams, as described in paragraph 11, were not within the fair and reasonable reach of Counterclaim Plaintiffs, particularly given Adams' efforts to conceal said facts and mislead Counterclaim Plaintiffs regarding their existence.

13. Adams had superior knowledge of the facts he concealed, given that they concerned the operations of Epic and his own undisclosed agreements with Epic, and therefore had a duty to disclose said facts.

14. Counterclaim Plaintiffs were unable to discover the facts concealed by Adams, as described in paragraph 11, despite their exercise of reasonable diligence, including their direct inquiries regarding the facts so concealed.

15. Adams made the factual representations in paragraph 11 knowing they were false, or with reckless disregard of their truth or falsity.

16. Each of the affirmatively misrepresented facts and wrongfully concealed facts described in paragraph 11 was material, in that they concerned the viability of Epic's business and its operations at the time Counterclaim Plaintiffs were determining

whether to invest in Epic and personally guarantee the line of credit extended to Epic by OakStar Bank.

17. Adams made affirmative misrepresentations of fact and concealed material facts, as described in paragraph 11, with the intent that Counterclaim Plaintiffs would act or rely upon the facts as so misrepresented or concealed, and in particular for the purpose of inducing Counterclaim Plaintiffs to invest in Epic and personally guarantee the line of credit extended to Epic by OakStar Bank.

18. Counterclaim Plaintiffs in fact relied on the affirmative misrepresentations and concealments of fact described in paragraph 4, as Counterclaim Plaintiffs' decisions to invest in Epic and personally guarantee the line of credit extended to Epic by OakStar Bank would not have been made but for Adams' affirmative misrepresentations and concealments of fact.

19. Counterclaim Plaintiffs had a right to rely on the facts as affirmatively misrepresented or wrongfully concealed by Adams.

20. As a result of Adams' fraudulent misrepresentations and concealments of fact, Counterclaim Plaintiffs sustained damages including but not limited to investment loss, personal liability for credit extended to Epic by OakStar Bank, and other pecuniary harm.

**COUNT II – NEGLIGENT MISREPRESENTATION/CONCEALMENT**

21. Adams concealed and/or misrepresented the following facts in the course of his business as a member/owner of Epic:

22

a. Adams concealed the existence of the Employment Agreement between Adams and Epic, which permitted Adams to conduct the business of Epic in a unilateral fashion, without input from other owners/members of Epic, engage in self-dealing benefiting Adams at the expense of Epic and its owners/members, and act in contravention of Epic's Operating Agreement and amendments thereto;

b. Adams represented to Counterclaim Plaintiffs that no Employment Agreement or other agreement existed between Epic and Adams permitting Adams to conduct the business of Epic in a unilateral fashion, without input from other owners/members of Epic, engage in self-dealing benefiting Adams at the expense of Epic and its owners/members, and act in contravention of Epic's Operating Agreement and amendments thereto;

c. Adams represented Epic was not in default on any existing loan at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank;

d. Adams represented that Counterclaim Plaintiffs' combined $3,000,000.00 investment in Epic would be held in a secure account with Knights Lending, and that the funds invested by Counterclaim

23

Plaintiffs would be accessible at any time and used for the benefit of Epic;

e. Adams represented to Counterclaim Plaintiffs that Epic required a line of credit in order to continue its operations through the end of 2023, while supposed future business prospects were finalized, and that said line of credit would be used for the benefit of Epic;

f. Adams concealed the fact that Epic was in default on existing loans at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank;

g. Adams concealed the fact that he had used his Epic stock as collateral to secure a loan made by Bonnie Snyder to Epic in the amount of $300,000.00;

h. Adams concealed the existence of certain ownership interests in Epic, or claimed ownership interests in Epic, at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank;

i. Adams misrepresented the existing or claimed ownership interests in Epic at the time of Counterclaim Plaintiffs' investment in Epic and their agreements to personally guarantee the line of credit extended to Epic by OakStar Bank.

22. Due to Adams' failure to exercise reasonable care, the factual representations described in paragraph 21 were false.

23. Adams had superior knowledge of the facts he concealed, given that they concerned the operations of Epic and his own undisclosed agreements with Epic, and therefore had a duty to disclose said facts.

24. Adams failed to exercise reasonable care to disclose facts which he had a duty to so disclose.

25. The information Adams misrepresented was intentionally provided to Counterclaim Plaintiffs for the guidance of Counterclaim Plaintiffs in particular business transactions in which Counterclaim Plaintiffs invested in Epic and agreed to personally guarantee the line of credit extended to Epic by OakStar Bank.

26. Counterclaim Plaintiffs justifiably relied on Adams' affirmative misrepresentations and concealments of fact, in that Counterclaim Plaintiffs would not have invested in Epic and agreed to personally guarantee the line of credit extended to Epic by OakStar Bank, but for said misrepresentations and concealments of fact.

27. As a result of Adams' negligent misrepresentations and concealments of fact, and Counterclaim Plaintiffs' justifiable reliance thereon, Counterclaim Plaintiffs sustained damages including but not limited to investment loss, personal liability for credit extended to Epic by OakStar Bank, and other pecuniary harm.

WHEREFORE, Counterclaim Plaintiffs respectfully request that the Court enter judgment in their favor and against Adams in an amount to be determined at trial, for

their costs and expenses as allowed by law, post-judgment interest at the highest rate allowable by law, and for such further relief as the Court deems just and proper.

                              TURNER, REID, DUNCAN,
                              LOOMER & PATTON, P.C.

                       By   */s/Warren E. Harris*
                              Warren E. Harris
                              Missouri Bar No. 40372
                              wharris@trdlp.com
                              1355 E. Bradford Pkwy., Suite A
                              Springfield, MO 65804
                              Tel: 417-883-2102
                              Fax: 417-883-5024
                              COUNSEL FOR DEFENDANTS
                              REINERT AND HORTON

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 25th day of November, 2024 the foregoing was electronically filed with the Clerk of the Circuit Court using the Case.net electronic filing system, which sent notification of such filing to counsel of record.

                                                        */s/Warren E. Harris*
                                                        Warren E. Harris